UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                                    )
                                          )   CASE NO. 04 B 32933
REPURCHASE CORPORATION,                   )
                                          )   Chapter 11
    Debtor                                )
                                          )
                                          )
                                          )

MEMORANDUM OPINION DENYING DEBTOR'S
(1) MOTION TO AMEND ORDER DENYING
CONFIRMATION OF AMENDED PLAN
AND
(2) MOTION TO VACATE DISMISSAL ORDER

Repurchase Corporation ("Debtor") filed this Chapter 11 bankruptcy case on September 3, 2004. A confirmation hearing on Debtor's Amended Plan of reorganization was held July 12, 2005. Evidence was taken. Findings of facts and conclusions of law supporting a denial of confirmation were orally recited from the bench at the close of the hearing.

The United States Trustee ("UST") filed a *Motion to Convert or, in the Alternative, Dismiss Chapter 11 Case* on July 14, 2005. A further hearing was held on July 25, 2005 and an order dismissing Debtor's case was signed on July 25, 2005 and entered on July 26, 2005.

Debtor filed two motions based on Rule 59(e) of the Federal Rules of Civil Procedure seeking to have the orders denying confirmation and dismissing its case each vacated. A hearing was held August 23, 2005 when parties in interest were heard. From the pleading and evidence

taken, the following Findings of Fact and Conclusions of Law are made and will be entered. Pursuant thereto, both motions are denied by separate orders.[1]

## FINDINGS OF FACT

1.  Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Code") on September 3, 2004.

2.  Prior to filing for bankruptcy, Debtor's business consisted of acquiring and selling investment securities for profit. Leon Greenblatt, Debtor's president, and his wife jointly own Debtor. Debtor's last acquisition occurred in 2001 and was for the purchase of stock in Health Risk Management ('HRM"). At the time of this transaction, HRM's stock was Debtor's primary security asset. As of the date of its bankruptcy filing, the value of HRM's stock had drastically deceased in value. Debtor suffered significant loses as a result. This precipitated Debtor's bankruptcy filing.

3.  Debtor's Amended Plan of reorganization and first amended disclosure statement were filed on April 28, 2005. According to its amended disclosure statement, Debtor's only assets are Net Operating Loss Carryovers ("NOL") that may be used for federal tax purposes. According to the disclosure statement, "the only way to monetize the sole valuable asset of the Debtor . . . is for the Debtor to cancel its current stock, issue New Stock and allow its post-confirmation equity to utilize the tax benefits of the NOLs." Am. Disclosure Statement, p. 8. Pursuant to the Amended Plan's terms of execution, a Mr. Greenblatt was to contribute $100,000 to Debtor in exchange for a 20% equity interest in the post-confirmation Debtor. This

---

[1] Analysis and conclusions of law issued in this matter are based on the title 11 of the U.S.C. that was in effect prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

contribution would be used to make pro rata cash distribution to eligible claimants. Neither the Plan nor the disclosure statement further identify the Mr. Greenblatt who was to provide financing. The Amended Plan also provided for the Debtor to received a discharge upon confirmation.

4.  The UST filed an objection to the Amended Plan and amended disclosure statement on June 17, 2005. MJK Clearing, Inc. ("MJK") also filed an objection to the Amended Plan on June 17, 2005. This was followed by Credit Suisse First Boston, LLC's ("CSFB") joining in the UST's objection.

5.  A hearing on confirmation of the Amended Plan was held on July 12, 2005. Evidence was offered by the Debtor in the form of oral testimony from Mr. Leon Greenblatt. Mr. Greenblatt testified that he contemplated that the reorganized Debtor would engage in the same type of business it had operated prior to the bankruptcy filing even though the business had not operated for several years. He further testified that his wife would provide the $100,000 necessary to finance the Plan's execution in exchange for an 100% interest in the reorganized Debtor. According to Mr. Greenberg, his wife's interest would be 100% because none of the creditors expressed an interest in purchasing stock in the reorganized Debtor. In addition, his wife would contribute $500,000 needed as capital for the reorganized Debtor's future investment operations. The reorganized Debtor was also to use cash derived from entering sharing agreements for the utilization of the NOLs as an additional source of operating capital. Despite these prognostications, Debtor offered no additional evidence to substantiate Mr. Greenblatt's testimony. No money at all was shown to be available, from the wife or anyone else, either the $100,000 or the $500,000 in required capital. As to the reason why Debtor had not engaged in

the purchasing and selling of securities for a long period before and since its bankruptcy filing, the witness testified that it was not possible for Debtor to attract new investors to invest in Debtor and enable it to purchase new investments while it was in a Chapter 11 case.

6. After consideration of the testimony and documentary evidence offered at the confirmation hearing, Findings of Facts and Conclusions of Law were orally delivered from the bench. The Amended Plan was held to fail mainly because no prospective investment supported it. It was also deemed illegal pursuant to section 1141(d)(3)(B) due to Debtor's failure to demonstrate that it will or could engage in business post-confirmation in light of the Plan that proposed to obtain a discharge. Confirmation was denied by order signed on July 25, 2005 and entered on July 26, 2005.

7. On July 14, 2005, the UST filed a motion to convert or, in the alternative, dismiss Debtor's case. The UST's reasoning was based on contention that a reasonable likelihood of Debtor's reorganization did not exist. A hearing was held on July 25, 2005 and the motion to dismiss was granted. An order dismissing the case was signed on July 25, 2005 and entered on July 27, 2005.

8. Thereafter, Debtor filed motions requesting that the order dismissing its case be vacated and that the order denying confirmation be altered so as to vacate it. Each motion was based on Rule 59(e) of the Federal Rules of Civil Procedure. MJK filed a written objection to these motions on August 19, 2005. A hearing on the motions was held August 23, 2005 whereby the Debtor, MJK, the UST and CSFB orally argued their respective positions. The motions did not offer specific new evidence although Debtor argued that now it can obtain a source of capital.

Debtor did not contend that it was prepared to offer evidence that existed but was unavailable when confirmation was denied.

9.      Facts stated in the Conclusion of Law will stand as additional Findings of Facts.

## CONCLUSIONS OF LAW

### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. These matters are before the bench pursuant to 28 U.S.C. § 157 and District Court Internal Operating Procedure 15(a). These matters constitute core proceedings under 28 U.S.C. §§ 157(b)(1) & (2)(L). Venue is proper pursuant to 28 U.S.C. § 1409(a).

### Discussion

Debtor's motions request two forms of relief -- vacation of the orders dismissing its case and denying confirmation of its Amended Plan of reorganization. Based on Rule 59(e) Fed.R.Civ.P., both motions allege that an error of law occurred in the rendering of each decision. However during oral argument on the motions, Debtor's counsel also argued that the motion to amend the order denying confirmation is intended to request opportunity to submit new evidence. See Fed.R.Bankr.P. 9023 which applies; Fed.R.Civ.P. 59(a). The motion itself does not request the latter relief. Debtor's counsel orally moved to have the judgment denying confirmation reopened for the purpose of submitting new evidence in support of confirming a plan of reorganization.

Since dismissal of Debtor's case hinged on the denial of confirmation, questions surrounding the propriety of the denial confirmation will be addressed first.

5

## A. Motion to Amend and Vacate Order Denying Confirmation of Amended Plan

### 1. Rule 59(e) Fed.R.Civ.P.

Rule 59(e), made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure, permits a party to file a motion seeking an alteration or amendment of a judgment. Motions based on Rule 59(e) will only be granted if there has been a mistake of law or fact to which the judgment was based upon or where there is newly discovered evidence that was not previously available. Gendron v. United States, 154 F.3d 672, 674 (7th Cir. 1998). A judge's decision to grant or deny relief on such motions is discretionary. LB Credit. Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995).

However Rule 59(e) may not be used as a means of presenting arguments or new legal theories or evidence that should have and could have been raised before the judgment was issued. Figgie Int'l Inc. v. Miller, 966 F.2d 1178, 1180 (7th Cir. 1992); FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986). Nor does it afford a movant an opportunity to introduce evidence that was available before the judgment was rendered. Matter of Prince, 85 F.3d 314, 324 (7th Cir. 1996). If evidence is presented, "the moving party must 'show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion].'" Caisse Nationale de Credit Agricole v. CBI Indus., Inc. 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting Engelhard Indus., Inc. v. Research Instrumental Corp., 324 F.2d 347, 352 (9th Cir.1963)).

In its motion, Debtor argues that an error of law occurred when confirmation was denied. Specifically, it contends that the discharge provision in its Amended Plan was proper, and that

6

denial of confirmation based on an error of law. Pointing to 11 U.S.C. § 1141(d)(3) for support, Debtor maintains that the record, as presented, did not support the ruling. Under section 1141(d)(3), a Chapter 11 debtor is not entitled to a discharge if all three conditions are shown:

> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> (B) the debtor does not engage in business after consummation of the plan; and
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C.A. § 1141(d)(3).

While the court found that Debtor has not engaged in business for some time and lacked the resources to restate the business if the Plan were confirmed, no finding was made as to whether the proposed Plan provided for the liquidation of Debtor's assets. According to Debtor, its Amended Plan does not provide for the liquidation of its assets, the NOLs. Moreover, none of the proposed alternative means of post-confirmation operations involved liquidating the NOLs.

Additionally, Debtor maintains that sufficient evidence was presented to support a finding under section 1141(d)(3)(B) that it intended to engage in business post-confirmation. For support, it relies on In re River Capital, 155 B.R. 382 (Bankr. E.D. Va. 1991), to illustrate that a debtor can be entitled to a discharge and have a plan confirmed where it provides for the possibility of a merger or acquisition as an alternative to liquidation. It argues that absent a finding that each element of section 1141(d)(3) has been satisfied, Debtor cannot be denied a discharge.

Debtor's Amended Plan did not specifically provide for liquidation of all or substantially all of its sole asset -- the NOLs. A "liquidation plan", generally involves the cessation of debtor's operations, the sale of debtor's assets and the distribution of the proceeds amongst

creditors. See, e.g., In re Lorraine Castle Apartments Bldg. Corp. 149 F.2d 55, 58 (7th Cir. 1945); In re Integrated Telecom Express, Inc., 384 F.3d 108, 120 (3d Cir. 2004); In re PPI Enterprises (U.S.), Inc., 324 F.3d 197, 211 (3d Cir. 2003); In re Shenandoah Realty Partners, L.P., 48 B.R. 505, 509 (W.D. Va. 2000); In re Deer Park, Inc. 136 B.R. 815, 818 (B.A.P. 9th Cir. 1992); In re Hobble-Diamond Cattle Co., 89 B.R. 856, 857 (Bankr. D. Mont. 1988); In re Quality Sign Co., Inc., 51 B.R. 351, 352 (Bankr. Ind. 1985).

With respect to the NOLs, the Amended Plan did provide that they were to be "monetized." No further information as to what this would entail was provided. Merriam-Webster Dictionary defines "monetize" as "to coin into money . . . to establish as legal tender" and as a means "to purchase (public or private debt) and thereby free for other uses money that would have been devoted to debt service." Merriam-Webster Online Dictionary, October 24, 2005. Yet, the Amended Plan and amended disclosure statement make repeated references to Debtor's inability to "sell" the NOLs. This position seems to have some support in provisions in the Internal Revenue Code. See generally 26 U.S.C. §§ 39, 382. In addition, Mr. Greenblatt testified that the NOLs were going to be used as a means of generating operating post-confirmation capital. In addition, he indicated that he and his wife were going to utilize all of the NOLs. Despite the unclear nature of how these NOLs are going to be "monetized," it appears that the NOLs are not going to be sold to satisfy creditor's claims. Thus, there is some logic behind Debtor's argument that his Plan to "monetize" was not a plan to "liquidate."

But that issue need not be decided. Even if Debtor is correct that inclusion of the discharge provision in its Amended Plan was not illegal since the Plan did not expressly provide for "liquidation" of the NOLs, it overlooks the overriding issue determined at the confirmation

8

hearing -- lack of plan feasibility. Under evidence heard at the confirmation hearing, Debtor's Amended Plan was not feasible.

Debtor's argument is that under some precedent the mere possibility of feasability is enough. But if metaphysical possibility of feasibility were sufficient, judges would be obligated to trade their robes for crystal balls.

When a Chapter 11 plan of reorganization is advanced, the plan's proponent has the burden of proving by a preponderance of evidence that the plan complies with statutory requirements for confirmation. United States v. Arnold & Baker Farms (In re Arnold & Baker Farms), 177 B.R. 648, 654-55 (B.A.P. 9th Cir. 1994). One of these requirements is that the plan is feasible, in that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." See 11 U.S.C. § 1129(a)(11).

In determining feasibility, the plan's proponent does not need to establish that the plan carries a guarantee of success. Matter of 203 N. LaSalle St. Partnership, 126 F.3d 955, 962 (7th Cir. 1997), rev'd on other grounds, 526 U.S. 434 (1999). However, the proponent need show that it provides for a "reasonable assurance of commercial viability." Id. A number of factors are pertinent in making this assessment: "the prospective earnings of the business or its earning power; the soundness and adequacy of the capital structure and working capital for the business which the debtor will engage in post-confirmation; the prospective availability of credit; whether the debtor will have the ability to meet its requirements for capital expenditures; economic and market conditions; the ability of management, and the likelihood that the same management will

continue; and any other related factors which would materially reflect on the company's ability to operate successfully and implement its plan." In re Prudential Energy Co. 58 B.R. 857, 862-63. See also In re M& S Assoc., Ltd., 138 B.R. 845, 849 (Bankr. W.D. Tex. 1992); In re Jartran, Inc., 44 B.R. 331, 393 (Bankr. N.D. Ill. 1984). A bankruptcy judge has an affirmative obligation to ensure that a plan of reorganization is feasible, M & S Assoc., Ltd., 138 B.R. at 848, that it is a plan that has "reasonable assurance" of viability, LaSalle Partnership, Id.

As is required in § 1128(a) of the Bankruptcy Code, a confirmation hearing on Debtor's Amended Plan was held on July 12, 2005, Debtor then had an opportunity and duty to prove that the proposed Plan should be confirmed, and to offer any evidence necessary to satisfy this burden. Debtor chose to solely rest this burden on the testimony of its president, Mr. Greenblatt. Debtor was given ample opportunity to prove that confirmation was warranted. Afterwards, findings of facts that highlighted the glaring deficiencies in the proposed Plan were dictated from the bench. This included a finding that Debtor had failed to prove that funding was available to finance the $100,000 to be paid to creditors or the $500,000 as capital required to restart that business, as required by the Plan. The only evidence offered on that point came in the form of Mr. Greenblatt's testimony that his wife would be the contributing source for needed capital and that Debtor would also enter into "sharing agreements" for unitization of its NOLs for the purpose of generating cash for post-confirmation operations. But in the absence of any form of corroboration or contract from the alleged sources of these funds, Mr. Greenblatt's testimony amounted to nothing more than sheer speculation and wishful thinking.

Allowing Debtor's confirmation to be based on a "hope against hope that the financing [would] actually materialize" post-confirmation without some form of corroboration would go

against a bankruptcy judge's duties of ensuring that the Plan complies with the provisions of the Bankruptcy Code. Matter of Midwestern Companies, Inc. 55 B.R. 856, 863 (Bankr. W.D. Mo. 1985); see also Prudential Energy Co., 59 B.R. at 766. As the Plan's proponent, Debtor had the obligation of proving that the Plan, as proposed, was feasible. Optimistic but hollow declarations from Debtor's President about hopes for funding did not satisfy its burden of proof. See, e.g. M & S Assoc., Ltd., 138 B.R. at 849 ("the proponent must prove that the debtor will have available credit and the ability to meet capital expenditures."); In re Ralph C. Tyler, P.E., P.S., Inc., 156 B.R. 995, 997 (Bankr. N.D. Ohio 1993) ("Without evidence of a firm commitment of financing, this Plan does not meet the feasibility requirement."):

> If the bankruptcy judge
>
> ... regardless of the undisputed absence of recent prior income from such activity and the downward trend, has to accept the unsubstantiated statement of a corporate officer that he has confidence in his projections [that] would make meaningless the requirement that the Court make a finding under § 1129(a)(11). In every case, such testimony is offered to obtain the benefits of confirmation. In effect, the Debtors and the Committee would require the Court to abdicate its statutory duty in deference to the unsupported belief of such officers.

In re Prudential Energy Co. 59 B.R. 765, 767 (Bankr. S.D.N.Y. 1986). Confirmation should neither be based on speculation nor the visionary projections of a debtor's champion. See, e.g., Prudential Energy Co. 58 B.R. at 862 (in the absence of other evidence that would support officer's projections regarding fund raising, officer's testimony was not found to be credible when measured against the fact that debtor had not generated income in the year prior to the confirmation hearing); see also Prudential Energy Co., 59 B.R. at 766-67 (rehearing on denial of confirmation denied).

Here, the testimony of Debtor's officer about hopes for funding was neither corroborated nor credible.

The order issued denying confirmation of Debtor's Amended Plan was properly entered based on failure to prove feasibility.

### 2. Rule 59(a) Fed.R.Civ.P.

Debtor also argues that the record should be reopened in order to submit evidence to aid in the confirmation of the Amended Plan. Although not expressly requested in its motion, Debtor made an oral motion to reopen the record during the hearing held on August 23, 2005. Although Debtor's motion alludes to the existence of a financing agreement to fund the Plan, that it entered into after the earlier orders were entered, it did not attach such an agreement to its motion.

Under Rule 59(a) Fed.R.Civ.P., as adopted by Rule 9023 of the Fed.R.Bankr.P., a "court may open the judgment once one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." A motion premised on Rule 59(a) "is not intended to secure a forum for the relitigation of old matters or to afford the parties the opportunity to present the case under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence." Fort Howard Paper Co. v. Standard Havens, Inc., 901 F.2d 1373, 1380 n.4 (7th Cir. 1990). Generally, the following prerequisites must be met before a new trial will be granted for the purposes of submitting newly discovered evidence:

> 1. The evidence existed at the time of trial or pertains to facts that existed at the time of trial;
> 2. The evidence was discovered following trial;

    3. The party presenting the new evidence exercised due diligence in discovering the evidence;
    4. The evidence is admissible;
    5. The evidence is credible;
    6. The evidence is material;
    7. The evidence is not merely cumulative or impeaching; and
    8. The new evidence is likely to change the outcome.

See Mumford v. Bowen, 814 F.2d 328, 330 (7th Cir.1986); Peacock v. Board of School Commissioners of Indianapolis, 721 F.2d 210, 213-14 (7th Cir.1983). A bankruptcy judge has broad discretion in ruling on motions to reopen a judgment. See Sellers v. Baisier, 792 F.2d 690, 693 (7th Cir. 1986). After consideration of these factors and the circumstances surrounding the confirmation hearing, Debtor's request to reopen the judgment must be denied. Even if he has some newly created evidence that would now support a Plan, that would not meet Seventh Circuit standards for applying Rule 59(a).

As observed above, July 12, 2005 was the date set aside for Debtor to prove that its Amended Plan should have been confirmed. What Debtor is essentially requesting is a "do-over" so that it can correct glaring deficiencies in its initial attempt to satisfy its burden of proof. Furthermore, the newly created evidence that Debtor wishes to offer cannot be deemed as "newly discovered." Necessary evidence should have been prepared and presented during the confirmation hearing. See, e.g., In re Hickey Properties, Ltd., 181 B.R. 173 (Bankr. D. Vt. 1995) (plan not feasible given lack of evidence substantiating ability to obtain funds post-confirmation); In re Ralph C. Tyler, P.E., P.S., Inc., 156 B.R. 995 (Bankr. N.D. Ohio 1993) (plan not feasible due to lack of evidence concerning financing or commitments to provide such financing); In re 222 Liberty Assoc., 108 B.R. 971 (Bankr. E.D. Pa. 1990) (plan feasibility based

on testimony of debtor that an investor was available and evidence that bank had extended a financing commitment letter conditioned on the investor's letter of credit); Prudential Energy Co., 58 B.R. 857 (Bankr. S.D.N.Y. 1986) (debtors failed to prove that plan was feasible).

The findings of facts and conclusions of law on which denial of confirmation was based were properly measured against the record Debtor developed during the original confirmation hearing and will not now be based upon the record it wishes it had created by now presenting newly created evidence. See, e.g., In re Stuart Glass & Mirror, Inc., 71 B.R. 332, 333-34 (Bankr. S.D. Fla. 1987). Debtor request to reopen the judgment under Rule 59(a) is therefore denied.

### B. Motion to Vacate Dismissal Order

The final matter that must be addressed is Debtor's motion to vacate the order dismissing its case. On a motion made by the UST, Debtor's case was dismissed under § 1112(b) of the Bankruptcy Code for its apparent inability at this time to effectuate a confirmable plan. Bankruptcy judges are given great discretion is determining when a Chapter 11 case that otherwise floundering should be dismissed. See Matter of Woodbrook Assoc. 19 F.3d 312, 322 (7th Cir. 1994) ("Chapter 11 provides a reasonable opportunity for corporate reorganization[;] it does not guarantee reorganization nor does it permit an indefinite suspension of creditors' rights and remedies pending the unsuccessful attempts of any party to effect a reorganization of debt. . . [B]ankruptcy courts are given a great deal of discretion to say when enough is enough.").

As observed above, Debtor's Amended Plan of reorganization was not confirmable. Moreover, Debtor has failed to articulate adequately why reinstating its dismissed case is more

14

convenient or appropriate than re-filing a new case, and has not attempted to argue that some impediment prevents it from filing a new Chapter 11 case.

An order that vacates a dismissal order is an unusual remedy. In re Robinson, 2003 WL 22077730*1 (Bankr. M.D. Ga. Apr. 15, 2003). A case should not be reinstated simply because the debtor is now ready to remedy a problem that lead to the dismissal. Id. Moreover, Debtor did not in its motion specify a concrete available and financially committed source of funding. See Viper Mining Co. v. Diversified Energy Venture (In re Diversified Energy Venture), 311 B.R. 712 (Bankr. W.D. Pa. 2004)(bankruptcy judge refused to "undo" order dismissing Chapter 11 debtor's case because it was highly unlikely debtor would effectively reorganize). Should Debtor have such funding available now, it can re-file. In re Everett, 29 B.R. 597 (Bankr. E.D. Ark. 1983) (Debtor's request under Rule 9023 to vacate voluntary dismissal of Chapter 11 denied based on the absence of an "error of fact" and debtor's ability to file a new case without prejudice).

Debtor's motion to vacate the dismissal order will therefore be denied.

## CONCLUSION

In light of the foregoing, this Debtor's *Motion to Amend Order Denying Confirmation of Amended Plan* and *Motion to Vacate Dismissal Order* are each denied by separate orders.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 31st day of October 2005.